NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEXON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF UNION BEACH,<br><br>Defendant. | Civil Action No. 19-14655 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

CASTNER, District Judge

**THIS MATTER** comes before the Court upon Plaintiff Lexon Insurance Company's Motion for Partial Summary Judgment. (*See* ECF No. 35.) Defendant Borough of Union Beach opposed (*see* ECF No. 40), and Plaintiff replied (*see* ECF No. 42). The Court has carefully considered the parties' submissions, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth herein, and other good cause shown, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

I.      **BACKGROUND**[1]

   A.      **Procedural History**

This dispute stems from additions and renovations to the Union Beach Municipal Building. On or about July 2, 2019, Plaintiff Lexon Insurance Company ("Plaintiff" or "Lexon"), an

---

[1] On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New*

insurance company with its principal place of business in Tennessee, brought suit against Defendant Borough of Union Beach ("Defendant" or "Union Beach"),[2] a municipality in Monmouth County, New Jersey, alleging breach of contract (Count One), seeking a declaratory judgment (Count Two), and alleging breach of the "Roof Work Letter Agreement" (Count Three). (ECF No. 1 ¶¶ 1, 29-43.)

On September 3, 2019, Union Beach moved to dismiss and/or transfer, arguing that (i) the doctrine of *forum non conveniens* required the case to be transferred to the Superior Court of New Jersey, and (ii) Lexon's failure to mediate prior to filing barred the Complaint. (ECF No. 6.) The motion was denied by the Court following a hearing on February 24, 2020. (ECF Nos. 13 & 16.)

Union Beach then answered the Complaint and asserted three counterclaims: Lexon is responsible for the damage caused by Rocon Construction Group, Inc. (Count One); breach of contract (Count Two); and breach of the covenant of good faith and fair dealing (Count Three). (ECF No. 14 at 4-7 ¶¶ 1-20.[3])

Following discovery, Lexon has now moved for partial summary judgment, asking the Court to grant judgment in Plaintiff's favor on its breach-of-contract claim, declaring that Plaintiff has no further liability on the performance bond at issue, and dismissing Union Beach's second and third Counts (for breach of contract and breach of the covenant of good faith and fair dealing)

---

*Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

[2]   The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1 ¶ 3.)

[3]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

with prejudice.[4] (ECF No. 35.) After obtaining an extension, Union Beach opposed on January 14, 2022 (*see* ECF No. 40), and Lexon replied on January 24, 2022 (*see* ECF No. 42).

### B. Undisputed Facts[5]

On March 15, 2018, Union Beach received bids for the expansion and renovation of the Union Beach Municipal Building. (SSMF & RSSMF ¶ 2.) On or about March 28, 2018, Union Beach entered into a contract with Brunswick Builders, LLC ("Brunswick"), a general contractor and the low bidder, to complete the project.[6] (SMF & RSMF ¶ 3; ECF No. 40-5 at 2 ¶ 6.) In connection therewith, Lexon (as surety) issued Performance Bond No. 1144010 in the penal sum of $3,012,483.00,[7] on behalf of Brunswick (as bond principal) in favor of Union Beach (the obligee). (SMF & RSMF ¶ 4; ECF No. 35-2 at 2.)

Shortly after Brunswick commenced construction, Union Beach's representatives concluded that Brunswick was incapable of properly performing the work required to expand and

---

[4] Lexon does not ask the Court to decide the parties' claims under the "Roof Work Letter Agreement," which was entered into in December 2018, and which Lexon writes "will be the subject of further proceedings regardless of the outcome of this motion." (ECF No. 41 at 5.)

[5] Plaintiff's Statement of Material Facts ("SMF") is at ECF No. 35-25; Defendant's Response to the Statement of Material Facts ("RSMF") is at ECF No. 40; Defendant's Supplemental Statement of Material Facts ("SSMF") is at ECF No. 40-1; and Plaintiff's Response to Defendant's Supplemental Statement of Material Facts ("RSSMF") is at ECF No. 42.

[6] This original contract between Union Beach and Brunswick does not appear to have been furnished to the Court by the parties during the present motion practice.

[7] The penal sum is typically the maximum total bond amount, absent circumstances such as the surety's breach of its own duties, the surety would be required to pay in event of the principal's default. *See* 4A Bruner & O'Connor Construction Law § 12:22 (July 2022 ed.) ("The limit of the surety's financial exposure under a performance bond is the sum stated on the face of the performance bond as the surety's maximum liability to the obligee for completion of the contract or payment of the obligee's actual costs of completion. This sum historically has been referred to as the 'penal sum' or 'bond penalty'—terms which originated in earlier times when the penal sum was forfeited entirely upon the principal's default as a 'penalty,' rather than serving as a mere source for payment of the obligee's actual damages up to the penal sum limit.").

renovate the town's municipal building. (SSMF & RSSMF ¶ 3.) Union Beach, Lexon, and Brunswick met in August 2018, and it was agreed that Rocon Construction Group, Inc. ("Rocon"), a general contractor based in Monmouth County, New Jersey, would assist Brunswick starting in September 2018. (SSMF & RSSMF ¶¶ 4-5.) Despite this assistance from Rocon, Brunswick's performance was still deemed inadequate, and there were water leaks from the roof that caused damage inside the municipal building and inconvenienced Union Beach's employees as well as members of the public. (SSMF & RSSMF ¶¶ 6-7.)

On November 19, 2018, Union Beach's governing body adopted Resolution No. 2018-172, which declared Brunswick in default and authorized the town's administrator to terminate the contract with Brunswick and to make a claim under the Performance Bond with Lexon. (SMF & RSMF ¶ 5.) The next day, November 20, 2018, Union Beach notified Lexon that it had declared Brunswick in default and that it was terminating the contract with Brunswick as of November 27, 2018. (SMF & RSMF ¶ 6.)

On November 26, 2018, Lexon responded to Union Beach to acknowledge the claim and to request certain information regarding the contract between Union Beach and Brunswick as well as the status of the project. (SMF & RSMF ¶ 7.) Lexon also retained Rocon to evaluate the claim. (SMF & RSMF ¶¶ 8-10.) According to Lexon, Rocon initially estimated that it would cost $41,000.00 beyond the amount owed by Union Beach on the original contract with Brunswick to finish the project. (SMF & RSMF ¶ 11.)

At the time it filed its claim, Union Beach notified Lexon that there were potentially unsafe conditions at the municipal building related to a temporary entrance that had been constructed by Brunswick and that there was also water infiltration. (SMF & RSMF ¶ 12.) It asked that Lexon urgently perform roof repairs to stop leaking and to protect employees and visitors to the municipal

4

building. (SMF & RSMF ¶ 14; SSMF & RSSMF ¶ 8-9.) Lexon and Union Beach then entered into a December 20, 2018 Letter Agreement (the "Letter Agreement" or "Roof Work Letter Agreement"), which specified that Rocon would be responsible for completing the roof repairs. (SMF & RSMF ¶¶ 15-16.)

Union Beach takes serious issue with how Rocon proceeded to perform the repairs.[8] (*See, e.g.*, ECF No. 40-3 at 2-31.) Although Union Beach was eager to have the work completed as soon as possible, Rocon had workers on-site just six of the first 55 days after it could begin the repairs. (SSMF & RSSMF ¶ 11.) As a result, the leaks continued for several months beyond when the municipality expected they would be cured. (SSMF & RSSMF ¶ 12.[9]) Indeed, despite the December 2018 Letter Agreement, the roofing work was not deemed complete until July 2019, and the warranty for the roof was not issued until October 18, 2019. (SSMF & RSSMF ¶ 15.) In addition, Rocon did not install the roof membrane and shingle roofing in accordance with contractual specifications. (SSMF & RSSMF ¶ 16.) Rocon also did not take adequate measures to secure the walkway into and out of the municipal building, which led the walkway to become wet and, at times, icy – posing a safety hazard to Union Beach's employees and residents when entering and leaving the municipal building. (SSMF & RSSMF ¶¶ 16-17.) One pregnant woman who slipped and fell on the walkway filed a notice of claim. (SSMF & RSSMF ¶ 17.)

---

[8]     Union Beach also notes that, at the time the Letter Agreement was signed, one of the remaining items to be completed was the removal of an old skylight on the municipal building and the installation of a new one. (SSMF & RSSMF ¶ 13.) However, because of an unexpectedly long lead time required to do the replacement (and Rocon's alleged failure to anticipate the timeline for delivery), Lexon unilaterally chose to remove the skylight replacement from Rocon's work requirements. (*Id.*)

[9]     Union Beach's Supplemental Statement of Material Facts had two paragraph 12s, and the Court treats them as a single paragraph 12, which is also how Lexon appears to have responded to them. (*Compare* ECF No. 40-1 at 3, *with* ECF No. 42 at 3.)

5

On January 2, 2019, Lexon sent Union Beach a draft tender agreement that proposed Rocon as the completion contractor for the entire municipal-building project (not simply the roof repairs), which Union Beach eventually rejected. (SMF & RSMF ¶¶ 17-18; SSMF & RSSMF ¶ 18.) On January 15, 2019, representatives from Lexon and Rocon met with representatives of Union Beach to discuss the project and what remained to be completed. (SMF & RSMF ¶ 20.) A week later, on January 22, Lexon sent Union Beach a draft takeover agreement that contained the terms under which Lexon proposed to complete the project pursuant to Section 5.2 of the Performance Bond.[10] (SMF & RSMF ¶ 21.) On January 30, Union Beach sent back proposed revisions. (SMF & RSMF ¶ 22.) The parties were ultimately unable to agree on the terms. (SMF & RSMF ¶ 23.)

Despite no executed takeover agreement, Lexon sent Union Beach an email on February 21, 2019, stating that Lexon had "approve[d] and authorize[d] Rocon to complete all remaining Contract Work," and that "Rocon agree[d] to complete all work in accordance with the approved Contract documents for the project." (SMF & RSMF ¶ 24; ECF No. 35-12 at 2.)

The next day, February 22, 2019, Union Beach sent an email to Lexon directing that Rocon should limit its remaining work to the roof repairs because the municipality was "exploring its options" as to how to complete the other aspects of the project. (SMF & RSMF ¶ 25; ECF No. 35-13 at 2.) In early March 2019, Benjamin R. Harvey Co., Inc. ("Ben Harvey"), a general contracting business, began inquiring (at Union Beach's request) with other general contractors as to what it would cost to complete the work on the municipal building. (SMF & RSMF ¶ 27.)

---

[10] The draft of the takeover agreement circulated by Lexon does not appear to include reference to Section 5.2 of the Performance Bond (*see* ECF No. 35-10 at 3-9), but Union Beach admits that the takeover agreement "contained the terms under which Lexon proposed to exercise its rights under section 5.2 of the Performance Bond." (*See* SMF & RSMF ¶ 21.)

6

On March 28, 2019, counsel for Union Beach sent a letter to Lexon demanding (among other things) that Lexon appoint Ben Harvey to complete the project work at a then-unspecified amount. (SMF & RSMF ¶ 28; ECF No. 35-15 at 8.) On April 10, 2019, counsel for Union Beach followed up with Lexon via email, stating that Union Beach "demand[ed] $1.6 million plus the tender of Ben Harvey Construction to resolve this matter." (SMF & RSMF ¶ 29; ECF No. 35-17 at 2.)

On April 11, 2019, counsel for Lexon replied to Union Beach to reject its demand that Lexon pay to hire Ben Harvey to complete the project. (SMF & RSMF ¶ 30; ECF No. 35-18 at 2-4.) Lexon wrote that Union Beach's "allegations that Rocon is not a competent contractor are conclusory and not backed-up by facts. The Borough's refusal to allow Rocon to complete the work is a breach of the [Performance Bond] that discharges Lexon from any liability thereunder. . . . The Borough cannot choose whatever contractor it wants to complete the work and then charge the costs to Lexon." (ECF No. 35-18 at 2-3.)

The following day, April 12, 2019, counsel for Union Beach replied by email, writing that the municipality "dispute[d] [Lexon's] contention that Rocon is a responsible or competent contractor. All of Rocon's efforts in its role as project manager to Brunswick Builders and its own efforts in connection with the roofing work demonstrate otherwise." (SMF & RSMF ¶ 31; ECF No. 35-19 at 2.) Union Beach demanded that Lexon either immediately tender Ben Harvey to complete the project and offer a lump sum payment or else Union Beach would rebid the project and pursue any claims it would have against Lexon, Rocon, and Brunswick. (*Id.*)

Lexon refused to tender Ben Harvey to complete the project or to make the lump sum payment demanded, which prompted Union Beach to rebid the project. (SMF & RSMF ¶¶ 32-33.) Following rebidding, Union Beach hired H&S Construction & Mechanical, Inc., to be the general

7

contractor that completed the project at a cost lower than that initially estimated by Ben Harvey. (SMF & RSMF ¶ 34; ECF No. 35-21 at 2; ECF No. 35-22 at 2.)

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56: Summary Judgment

Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III.  DISCUSSION

### A. Breach of Contract

The contract dispute primarily stems from Lexon's claim that Union Beach breached the express terms of the Performance Bond by refusing to accept Lexon's choice of completion contractor (Rocon) pursuant to Section 5.2 of the Bond.[11] (ECF No. 35-26 at 12-21.) Lexon cites judicial opinions from federal courts outside the Third Circuit for the proposition that, under the same type of performance bond at issue in this case (an "A312 form performance bond"), "the surety has the right to use its contractor of choice, even over an owner's objection." (*Id.* at 16-18

---

[11]   The parties' dispute as to any breach of the Letter Agreement for repair of the municipal building's roof is not at issue presently, and the parties retain their respective claims thereunder. (*See* ECF No. 41 at 5.)

(collecting cases).) In opposition, Union Beach does not contest that the express terms of the Performance Bond seemingly grant Lexon wide discretion to use the contractor of its choice when it assumes responsibility for completion of the project pursuant to Section 5.2 of the Bond; instead, Union Beach submits that, contrary to the out-of-circuit cases cited by Lexon, New Jersey law (especially as it relates to the covenant of good faith and fair dealing) does not permit a surety "absolute discretion" in selecting the contractor of its choosing to complete a project, especially not one found to be inadequate and previously dismissed by the bond's obligee. (ECF No. 40-4 at 8-9.)

Under New Jersey law,[12] a "suretyship" is defined as "a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal." *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 145 N.J. 345, 353 (1996) (quoting *Amelco Window Corp. v. Fed. Ins. Co.*, 127 N.J. Super. 342, 346 (App. Div. 1974)). "It has long been settled law that a surety is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended either by implication or by construction beyond the confines of its contract." *Id.* at 356 (quoting *Monmouth Lumber Co. v. Indem. Ins. Co. of N. Am.*, 21 N.J. 439, 452 (1956)).

"Because a suretyship implicates a contractual relationship, the construction of its terms is a question of law for the court." *Medford Commons, LLC v. Lexon Ins. Co.*, Civ. No. A- 2040-17, 2019 WL 7183569, at *7 (N.J. Super. App. Div. Dec. 26, 2019) (citing *Kieffer v. Best Buy*, 205 N.J. 213, 222 (2011)). "As a contract, the Bond is controlled by the rules of contract

---

[12] The parties appear to be in agreement that New Jersey law applies to the common law claims in this diversity action. *See Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015) ("[A] federal court must apply the substantive laws of its forum state in diversity actions . . . ." (quoting *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007))).

interpretation." *Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, Civ. No. 06-2996, 2016 WL 4150746, at *3 (D.N.J. Aug. 1, 2016). The chief object "of contract interpretation is to determine the intent of the parties." *Id.* (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009)). And "[t]he strongest objective manifestation of intent is the language of the contract." *Id.* (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011)).

Here, the express terms of the Performance Bond, which used the 2010 version of form Document A312 from the American Institute of Architects (*see* ECF No. 35-2 at 2), provided Lexon (as surety) four options upon default of Brunswick (as principal and contractor) under the original construction contract with Union Beach (as obligee and owner of the municipal building):

> **§ 5.1** Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;
>
> **§ 5.2** Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;
>
> **§ 5.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence . . . . ; or
>
> **§ 5.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
>     1    After investigation, determine the amount for which it may be liable to the Owner . . . .; or
>     2    Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

[(ECF No. 35-2 at 3.)]

The Performance Bond thus plainly states that if Lexon opted to proceed pursuant to Sections 5.1 or 5.3 of the Bond, then Union Beach's "consent" or "concurrence" would be required as to the selection of the completion contractor. (*Id.*) In contrast, Section 5.2 of the Bond is silent

10

as to whether Union Beach's consent was necessary if Lexon chose to "[u]ndertake to perform and complete the [work] itself, through its agents or independent contractors." (*Id.*)

Other federal courts to examine similar language as exists in Section 5.2 of the Bond, including the same form A312, have held that when a surety opts to take over and complete a construction contract (as here), an owner/obligee is not entitled (unless the bond itself provides otherwise) to unreasonably interfere with the surety's selection of its completion contractor, even if the surety elects to use the same contractor as led to the original default. *See St. Paul Fire & Marine Ins. Co. v. VDE Corp.*, 603 F.3d 119, 124 (1st Cir. 2010) ("We cannot rewrite Paragraph 4.2 to require owner consent in cases where the owner voices a 'well-founded objection' to the selected contractor."); *Fid. & Deposit Co. of Maryland v. Jefferson Cnty. Comm'n*, 756 F. Supp. 2d 1329, 1339 (N.D. Ala. 2010) ("To enforce the Bond, however, the JCC had to work under the terms of the Bond and allow F & D to takeover responsibility of the elevator construction under Paragraph 4.2. This it did not do, and it cannot now ask for relief under the Bond."); *St. Paul Fire & Marine Ins. Co. v. City of Green River, Wyo.*, 93 F. Supp. 2d 1170, 1177 (D. Wyo. 2000), *aff'd*, 6 F. App'x 828 (10th Cir. 2001) ("In proceeding under Paragraph 4.2, St. Paul assumed primary responsibility to complete the contract, and with that responsibility came the freedom to assemble the project team of its choosing."); *see also Seawatch at Marathon Condo. Ass'n, Inc. v. Guarantee Co. of N. Am.*, 286 So. 3d 823, 827 (Fla. Dist. Ct. App. 2019) (holding that where the surety assumed responsibility for the project, it could select the defaulting contractor as completion contractor when the relevant provision of the performance bond, "by its express language, does not reflect any requirement of mutual assent in the selection of the completion team").

In *VDE Corp.*, the United States Court of Appeals for the First Circuit explained that when a surety chooses to undertake completion of a construction project, it assumes primary

11

responsibility for the contract, including the financial obligations, and it follows that the surety should have the freedom to choose its own completion team. 603 F.3d at 123-24 (citations omitted). This not only has been found to be sound general policy but also comports "with common practices in the construction industry," where sureties undertaking completion of a project regularly "hire the original contractor." *Id.* at 124 (citing Richard S. Wisner & James A. Knox, Jr., *The Abcs of Contractors' Surety Bonds*, 82 Ill. B.J. 244, 246 (1994)).

In view of this precedent as well as the plain language of Section 5.2 of the Performance Bond at issue in the present case, the Court holds that an express breach-of-contract claim premised on Lexon's decision to select Rocon as the completion contractor for the additions and renovations to the Union Beach Municipal Building cannot be maintained against Lexon,[13] and Lexon is entitled to summary judgment on the breach-of-contract claims.[14] As other courts considering similar contractual terms have found, Section 5.2 (unlike Sections 5.1 and 5.3) does not grant the municipality the right to review and reject Lexon's selection of completion contractor; Union

---

[13]   The Court does not decide (because a decision was not sought) whether a breach-of-contract claim can be maintained against Lexon under the Letter Agreement.

[14]   Lexon also argues that it is entitled to summary judgment on the breach-of-contract claims because its obligation to perform under the Performance Bond never arose because Union Beach did not agree to pay the balance of the original contract pursuant to Section 3(3) of the Bond. (See ECF No. 41 at 7.) The Court is not inclined to grant the motion on this basis and believes there is a genuine material dispute in the record. Union Beach denied the statement that it had refused to pay Lexon the balance of the original contract (SMF & RSMF ¶ 36), and the December 20, 2018 Letter Agreement, entered into by the parties after the notice of Brunswick's default, expressly contemplated that Union Beach would continue to make payments to Lexon pursuant to the original contract. (*See* ECF No. 35-8 at 2-3 ("Payment for the roof work shall be made in accordance with the terms and conditions of the Contract.").) From this record, the Court cannot find that Union Beach "ha[d] [not] agreed to pay the Balance of the Contract Price" (*see* ECF No. 35-2 at 3), and absent the dispute over whether Lexon could unilaterally impose Rocon as the contractor, the record might in fact support the finding that the municipality was willing to pay the remaining balance of the contract to Lexon. (*See* ECF No. 40-5 ¶ 27.) In any event, if this were the only basis for summary judgment on the breach-of-contract claims, the Court believes the factual dispute would be more appropriately decided by a jury.

Beach's remedy for continued poor performance by Rocon (as an agent of Lexon undertaking completion of the project) would be limited to a contractual claim against Lexon, not a veto of Lexon's choice of contractor. *See VDE Corp.*, 603 F.3d at 125 ("In the event that [the surety] fails to meet its obligations to complete the contract, [the obligee] has a remedy against [the surety]."). Accordingly, Union Beach materially breached the Performance Bond by refusing to allow Lexon to select Rocon as the completion contractor pursuant to Section 5.2, and Lexon is therefore released from its obligations to perform under the Bond. *Id.*; *City of Green River*, 93 F. Supp. 2d at 1179 ("[T]he Board's action depriving St. Paul of those options was a material breach, which discharged St. Paul from any further duty of performance under the bond."); *see also Roach v. BM Motoring, LLC*, 228 N.J. 163, 174 (2017) ("In the event of a 'breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.'" (quoting *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990))).

### B. Breach of the Covenant of Good Faith and Fair Dealing

"In New Jersey, '[e]very contract contains an implied covenant of good faith and fair dealing.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 348 (3d Cir. 2022) (quoting *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002)). "The implied covenant prohibits either party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997)).

Relevant here, the covenant "permit[s] inquiry into a party's exercise of discretion expressly granted by a contract's terms." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002) (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 250 (2001)). Indeed, "it may occur that a party will be found to have breached the implied covenant even if the action

13

complained of does not violate a 'pertinent express term.'" *Id.* at 258 (quoting *Wilson*, 168 N.J. at 244). In *Wilson*, the New Jersey Supreme Court advised that, when considering whether a party granted discretion by a contract has breached the implied covenant, courts "must respect and give effect to the parties' bargain as expressed in the contract." 168 N.J. at 250. Nevertheless, the Court underscored that "the discretion afforded . . . is not unbridled discretion" and must be "tempered by . . . the reasonable expectations of the parties." *Id.* The test devised by the New Jersey Supreme Court was thus:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.
>
> [*Id.* at 251.]

The *Wilson* Court emphasized that "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive," and "discretionary decisions that happen to result in economic advantage to the other party are of no legal significance." *Id.* (citing *Abbott v. Amoco Oil Co.*, 249 Ill. App. 3d 774, 781 (1993)); *see also Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006) ("[A]s we indicated . . . in a point the Supreme Court of New Jersey has approved . . . , the covenant should not be construed 'too broadly' as it 'could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'" (quoting *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000))).

Applying the test set forth by the New Jersey Supreme Court to the present record, the Court finds that Union Beach has failed to provide sufficient factual support to enable the Court

14

to infer that Lexon was acting in bad faith in electing to use Rocon as the completion contractor. Where, as here, an owner/obligee opposes a surety's discretionary decision (consistent with the express provisions of a performance bond) to utilize a certain completion contractor because the owner/obligee objects to the pace or quality of prior work done by the contractor, a claim for breach of the implied covenant will not lie simply because the owner/obligee has a legitimate basis to prefer a different completion contractor. *See Fid. & Deposit Co. of Maryland*, 756 F. Supp. 2d at 1338-39 (granting summary judgment on defendant's counterclaim for violation of the covenant of good faith and fair dealing); 4A Bruner & O'Connor Construction Law § 12:80 (July 2022 ed.) ("The obligee has no right to unreasonably interfere with the surety's selection of its completion contractor, unless the bond provides otherwise.").

As noted above, there are sound reasons why a surety might select a contactor already familiar with a construction project to complete the project, even if the contractor in question has performed poorly up to that point – not the least of which is that those who have already been working on a project will likely be familiar with what is left to be completed. *See VDE Corp.*, 603 F.3d at 124 ("It is common practice for a surety undertaking to complete the project itself to hire the original contractor . . . ."); *City of Green River*, 93 F. Supp. 2d at 1178 ("[I]t is common practice for a surety that elects to perform the project itself to hire the principal's employees under the direction of a consultant . . . .").

A surety exercising the discretion that has been afforded to it, in accordance with common industry practice, is not liable for a claim of breach of the implied covenant absent a demonstration that the selection of the completion contractor was done with bad faith or improper motive by the surety. *See Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 424-25 (D.N.J. 2015) ("Exercises of discretion for 'ordinary business purposes' do not constitute improper motive, and

a plaintiff cannot satisfy the 'improper motive' element by merely alleging that a defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." (citing *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 518 (D.N.J. 2009))); *see also Abbott*, 249 Ill. App. 3d at 782 ("[T]he dealers cannot complain when Amoco merely exercises the discretion the dealers allowed Amoco to possess. Bad faith or unfairness needs to be pleaded affirmatively in a case like the present one.").

Union Beach has not pointed to anything in the record before this Court that could support the conclusion that Lexon was acting in bad faith in selecting Rocon. Although the Court understands the reservations expressed by Union Beach as to Rocon's prior performance, particularly as to Rocon's failure to diligently mitigate roof leaks and to adequately protect those entering and exiting the municipal building, these performance-related objections (which are not uncommon when a surety selects a defaulting contractor[15] as the completion contractor) without more are inadequate for the Court to find support for the conclusion that Lexon acted with an improper motive. *See Wilson*, 168 N.J. at 251 ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.").

Had Union Beach permitted Lexon to proceed with Rocon as the completion contractor and had Rocon failed to satisfy the contractual obligations being assumed by Lexon, Union Beach certainly would have had a claim against Lexon pursuant to the Performance Bond. Nevertheless, Union Beach cannot thwart Lexon's discretionary right under Section 5.2 of the Bond to select the completion contractor of Lexon's choice and then, after Union Beach has proceeded to select the

---

[15] The Court appreciates that it was Brunswick that was the initial defaulting contractor, not Rocon, but Union Beach's objections to Rocon are based on similar grounds.

16

contractor of the municipality's choice in, seek to hold Lexon liable under the same Performance Bond without some factual indication of bad faith on Lexon's part. Because nothing in the record suggests that a reasonable factfinder could conclude that Lexon's decision was motivated by bad faith, the Court will also grant summary judgment in Lexon's favor and dismiss Defendant's counterclaim for breach of the implied covenant of good faith and fair dealing.

## IV.     CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Partial Summary Judgment (*see* ECF No. 35) is **GRANTED**. An appropriate Order follows.

Dated: May 30, 2023

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE