NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEXON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF UNION BEACH,<br><br>Defendant. | Civil Action No. 19-14655 (GC) (JBD)<br><br>**MEMORANDUM ORDER** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Borough of Union Beach's Motion to File Supplemental Counterclaim. (ECF No. 79.) Plaintiff Lexon Insurance Company opposed, and Defendant replied. (ECF Nos. 80 & 81.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **DENIED**.

I.   **BACKGROUND**[1]

As the Court detailed before, this dispute stems from additions and renovations to the Union Beach Municipal Building. (*See* ECF No. 57.)

Five years ago, in July 2019, Plaintiff Lexon Insurance Company, a surety and insurance company with its principal place of business in Tennessee, sued Defendant Borough of Union

---

[1]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Beach, a municipality in Monmouth County, New Jersey. Plaintiff asserted three claims: breach of contract (Count One), declaratory judgment (Count Two), and breach of a roof work letter agreement governing certain roof repairs to the Borough's municipal building (Count Three). (ECF No. 1 ¶¶ 1, 29-43.) On March 10, 2020, Defendant answered and asserted three counterclaims: "Lexon's Responsibility for Damage Caused by Rocon" (Count One); breach of contract (Count Two); and breach of the covenant of good faith and fair dealing (Count Three). (ECF No. 14 at 4-7 ¶¶ 1-20.)

Following discovery, Plaintiff moved for partial summary judgment. (ECF No. 35.) On May 30, 2023, the Court issued a Memorandum Opinion as well as an Order & Judgment. (ECF Nos. 57 & 58.) For the reasons detailed in the written decision, the Court found in favor of Plaintiff on its breach of contract and declaratory judgment claims (Counts One and Two), and the Court found against Defendant and dismissed its breach of contract and breach of the covenant of good faith and fair dealing counterclaims (Counts Two and Three). (ECF No. 58.) The Court ruled that Defendant had "materially breached the Performance Bond by refusing to allow [Plaintiff] to select . . . the completion contractor pursuant to" the express terms of the bond, and Plaintiff was "therefore released from its obligations to perform under the Bond." (ECF No. 57 at 12-13.)

The Court's decision left two unresolved claims. Plaintiff maintained its claim under the letter agreement for roof repairs to the municipal building (Count Three), and Defendant maintained its counterclaim to hold Plaintiff liable for damage allegedly caused by Rocon Construction Group, Inc. (Count One). The Court held a telephonic conference with the parties on July 7, 2023, and it gave the parties until October 20, 2023, to complete fact discovery on the remaining claims and until February 9, 2024, to complete expert discovery. (ECF No. 64.) The Court stated that based on the age of the case, "[f]urther extensions [were] highly unlikely to be

granted." (*Id.*)

On November 6, 2023, the Court so ordered a proposed briefing schedule for summary judgment on the two remaining claims. (ECF No. 69.) The schedule directed any final summary judgment motions to be filed by January 10, 2024. (*Id.*) The deadline was extended two weeks at Plaintiff's request. (ECF No. 71.)

On January 22, 2024, the parties filed a proposed order that stipulated to the dismissal of Defendant's Count One, for damages allegedly stemming from Rocon's roof work on the municipal building. (ECF No. 72.) This was the only counterclaim that the Borough had left. Then, two days later, on January 24, 2024, Plaintiff moved for partial summary judgment arguing that Defendant's "new damages theory [was] untimely and meritless." (ECF No. 73.) No "new damages theory" had been presented to the Court in any pleading. Thus, the Court held a telephonic conference with the parties on February 7, 2024, to understand the status of the matter. (ECF No. 76.)

At the telephonic conference, Defendant confirmed that it was dismissing its last remaining counterclaim but stated that it wanted to plead a new counterclaim based on two alleged overpayments it had newly identified. (*Id.*) Plaintiff informed the Court that it opposed Defendant's late attempt to amend its pleading. (*Id.*) Plaintiff also informed the Court that it would not be moving for summary judgment on Count Three related to the roof work letter agreement and that Plaintiff is ready to proceed to trial on that sole remaining claim in the case. (*Id.*)

That same day, February 7, 2024, the Court entered the parties' proposed stipulation and order that dismissed Defendant's Count One, resulting in no counterclaims left in the case. (ECF No. 78.) The Court also issued a text order terminating Plaintiff's premature motion for summary

3

judgment on Defendant's unpleaded counterclaim and directed Defendant to move to amend, if it so desired. (ECF No. 77.)

On February 28, 2024, Defendant moved for leave to file its new proposed counterclaim. (ECF No. 79.) Plaintiff opposed on March 13, and Defendant replied on March 20. ((ECF Nos. 80 & 81.)

## II.  LEGAL STANDARD

The decision whether to grant leave to amend is within a district court's sound discretion. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Under Rule 15, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The aim is to ensure that "an inadvertent error in, or omission from, an original pleading will not preclude a party from securing relief on the merits of his [or her] claim." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). A court may deny leave to amend, however, "when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019) (quoting *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016)).

If a party seeks leave to amend after the deadline set in a district court's scheduling order, the movant must demonstrate "good cause" under Rule 16(b)(4) to alter the scheduling order before the Court considers leave to amend under Rule 15(a). Fed. R. Civ. P. 16(b)(4); *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. A party must

4

meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard.").

To establish "good cause," a movant bears the "burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). For due diligence, courts "evaluate whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Battista v. Advanced Fin. Serv. LLC*, Civ. No. 21-12979, 2023 WL 2401998, at *4 (D.N.J. Mar. 8, 2023). And where "the movant has the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline as set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion." *Id.* Nevertheless, good cause "may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." *Young v. United States*, 152 F. Supp. 3d 337, 352-53 (D.N.J. 2015) (quoting *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012)).

### III. DISCUSSION

Defendant Borough of Union Beach writes that it seeks to assert a new counterclaim for monetary damages based on "overpayments" because of "the recent discovery by the Borough that it had overpaid" $48,386.51 in the form of one alleged overpayment to Brunswick Builders, LLC, of $9,922.50 and a second alleged overpayment to Rocon Construction Group of $38,464.01. (ECF No. 79-1 at 1.) The two overpayments are alleged to have "resulted from administrative errors" and Brunswick's "misplaced building supports." (ECF No. 79 at 3.) The Borough provides

a certification from its Administrator, Robert Howard, who says that during "preparation for [his] deposition," he "discovered that the Borough had overpaid" Brunswick and Rocon. (ECF No. 79-2 at 1.) Attached to the certification are pay applications from 2018 and 2019. (ECF No. 79-2 at 3-8.) Defendant writes that if it is not permitted to assert the proposed counterclaim, it should be allowed to argue at trial that the overpayments are set offs against the "approximately $147,000" that Plaintiff is pursuing under the roof work letter agreement related to the roof repairs to the Borough's municipal building. (ECF No. 79-1 at 2.)

In opposition, Plaintiff argues that the motion for leave to amend is untimely because the "court-ordered deadline for motions for leave to amend pleadings expired in November 2020—more than three years ago," and the Borough cannot show "good cause" under Rule 16(b) to alter the scheduling order.[2] (ECF No. 80 at 5.) Plaintiff notes that fact discovery is closed, and it "has never had a full opportunity to take discovery on the Borough's new" proposed counterclaim, and it "would either need to proceed to trial without the benefit of such discovery or fact discovery would need to be reopened and at least one witness re-deposed—adding more delay to this already four-and-a-half-year-old case."[3] (*Id.* at 10-11.) Plaintiff also argues that "the proposed new claim is futile," because "[t]he new claim is premised upon the allegation that Lexon is liable for defective work of [two non-parties] under a performance bond. But the Court has already held that the Borough materially breached the performance bond and declared that Lexon is relieved of further obligation under that bond." (*Id.* at 6.)

---

[2]   There was initial confusion as to whether the Borough moved for leave to amend under Rule 15(a) or for leave to file a supplemental pleading under Rule 15(d). (ECF No. 80 at 6-7.) The Borough clarified on reply that it moves for leave to amend under Rule 15(a), and it "erroneously referenced" the term "supplement" in its moving papers. (ECF No. 81 at 1.)

[3]   The Borough writes that "[i]f a renewed deposition of the architect is required," the Borough "will make him available." (ECF No. 79-1 at 2.)

6

In reply, Defendant modifies the factual allegations in support of its proposed counterclaim. Defendant writes that it erred in its moving papers and that the second alleged overpayment of $38,464.01 was not made to Rocon but directly to Plaintiff. (ECF No. 81-2 at 1.) Defendant does not dispute that it must show "good cause" and "due diligence" under Rule 16(b) to amend, and it writes that it "is a very small Borough with a very small staff, and this matter . . . has generated many thousands of documents. Mistakes can be made." (ECF No. 81 at 1.) Finally, Defendant argues that "Lexon guaranteed [Rocon's and Brunswick's] performance," and the "Borough's later purported breach of the completion aspect of the Bond should have no bearing upon its obligation to insure the performance aspect of the Bond." (*Id.* at 2.)

Having carefully considered the parties' submissions, the Court does not find "good cause" under Rule 16(b) to alter the scheduling order. Defendant has failed to show due diligence in seeking leave to amend.

Plaintiff initiated this action in July 2019, and Defendant moved to dismiss in September 2019. (ECF Nos. 1 & 6.) The Court denied the motion in February 2020, and Defendant then answered and asserted its counterclaims in March 2020. (ECF No. 14.) On October 29, 2020, the Court issued a pretrial scheduling order stating that "any motion to amend the pleadings . . . must be with leave of Court and filed no later than November 25, 2020"—almost four years ago. (ECF No. 22.) The parties never asked for that deadline to amend to be extended, and the Court did not extend it in subsequent scheduling orders. (ECF Nos. 46, 48, 51, 64.) Since then, the Court has granted summary judgment on all but two of the claims and Defendant dismissed its last counterclaim.[4] (ECF Nos. 58 & 78.) Fact and expert discovery closed on October 20, 2023, and

---

[4] Defendant also represents that it settled with Rocon in a state-court matter "seeking recovery of the same items of Alleged Roof Work Damages as it sought to recover from Lexon in the first counterclaim in this action." (ECF No. 72 at 2-3.)

7

February 9, 2024, respectively. (ECF No. 64.) The sole claim remaining for trial is Count Three of Plaintiff's complaint seeking damages under the roof work letter agreement.

At this stage, Defendant's attempt to alter the scheduling order to assert a new counterclaim that does not appear to stem from work done pursuant to the roof work letter agreement is four years beyond the Court's deadline. Even if the Court were inclined to permit such a late alteration, Defendant has not demonstrated due diligence. While the Court appreciates Defendant's arguments, the information needed to assert this proposed counterclaim was available to the Borough since at least 2019. Indeed, the pay applications supplied to support the two alleged overpayments are from 2018 and 2019, and signed by the Borough's architect. (ECF No. 79-2 at 3-8.)

Moreover, Defendant does not claim that it learned of the alleged overpayments from anything produced during discovery; it simply writes that the Borough's Administrator "discovered," at some point, the overpayments when preparing for his deposition. (*Id.* at 1.) Defendant does not explain why the discovery was not made earlier despite the extensive submissions in opposition to Plaintiff's motion for partial summary judgment. (ECF No. 40-5.)

Under similar circumstances, courts in this Circuit have denied motions seeking leave to amend, emphasizing the lack of diligence where a party has long been in possession of the information underlying the proposed new claim. *See, e.g.*, *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (affirming denial of leave to amend where the defendant "was in possession of the facts underlying its proposed counterclaim well before the amendment deadline"); *Morel v. Goya Foods, Inc.*, Civ. No. 20-05551, 2022 WL 3369664, at *3 (D.N.J. Aug. 16, 2022) ("[T]he failure to timely discover and address a possible pleading deficiency despite actual or constructive knowledge of it constitutes a lack of diligence under Rule

8

16 — federal courts agree." (collecting cases)); *Stallings ex rel. Est. of Stallings v. IBM Corp.*, Civ. No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying leave to amend for lack of "good cause" where the plaintiffs "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline").

For similar reasons, the Court finds that Defendant's motion for leave to amend would also be denied under Rule 15(a) based on the undue delay and the unwarranted burden on both the Court and Plaintiff of reopening discovery and further delaying a trial on the merits. *See Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."); *see also United States ex rel. McDermott v. Life Source Servs., LLC*, Civ. No. 19-15360, 2023 WL 2238550, at *6 (D.N.J. Feb. 27, 2023) ("To allow amendment . . . at this juncture would multiply the proceedings, protract discovery, and unduly cause Defendants to incur considerable additional costs. [Plaintiff] has not shown good cause to do so, and has not satisfied either Rule 16 or Rule 15.").

This case is five years old. The Court has already decided a partial summary judgment motion resolving four of six claims and counterclaims as well as the parties' obligations under the performance bond. Both fact and expert discovery have now closed. Plaintiff has a single claim pending for trial pertaining solely to the roof work letter agreement. Reopening discovery to explore Defendant's proposed counterclaim on damages at this late stage would potentially cause substantial further delay. Although Defendant argues that discovery on its proposed counterclaim would be limited, there are obviously meaningful factual details that would need to be clarified before the potential filing of dispositive motions. For example, in its moving brief, Defendant

claimed that it was seeking repayment of the alleged overpayment of $38,464.01 made to Rocon, but then in reply, Defendant wrote that it erred and the overpayment was actually made to Plaintiff. (*Compare* ECF No. 79-2 at 2, *with* ECF No. 81-2 at 1.)

Further, the Court's review suggests that the proposed counterclaim has little to no relation to the roof work letter agreement, the only issue left in this case. Instead, Defendant raises new arguments as to Plaintiff's obligations under the performance bond, even though the Court's May 2023 summary judgment decision found that "Defendant materially breached the Performance Bond by refusing to allow Plaintiff to select the completion contractor of its choice," which "relieved [Plaintiff] of any further performance obligations under the Bond." (ECF No. 59.)

Notably, as to the first alleged overpayment of $9,922.50 to Brunswick, Defendant claims that the performance "bond incorporated the terms of the contract between the Borough and Brunswick and it obligated Lexon" to repay this amount on behalf of Brunswick. (ECF No. 79 at 3.) As to the second alleged overpayment of $38,464.91, it does not appear that Defendant actually paid this amount; rather, Defendant is seeking a reduction to the $105,233.00 it paid "to repair defects in the concrete work by . . . Brunswick Builders." (ECF No. 82 at 1; ECF No. 73-28 at 8-10.) There is no indication that the concrete work completed by Brunswick relates to the roof work letter agreement; instead, Defendant claims that Plaintiff is liable under the performance bond for Brunswick's faulty concrete work and that the cost to repair such faulty work should be used to reduce what Defendant owes Plaintiff/Rocon under the roof work letter agreement. (*Id.*) Both of these two alleged "overpayments" implicate the parties' obligations under the performance bond, an issue previously litigated and decided without the present arguments being raised. And neither Brunswick nor Rocon is a party to this action. Plaintiff also submitted a declaration of Christopher Parrish, Vice President, Surety Claims at Lexon, who represents that Plaintiff "was

not directly involved in making or approving [the disputed] pay applications" and did not "receive any of the payments made by the Borough based upon those pay applications." (ECF No. 73-1 at 5-7.) The Court sees no basis to reopen discovery to explore, among other things, what monies were and were not overpaid under the pay applications, the quality of Brunswick's concrete work, who was involved in reviewing and approving pay applications, and to potentially require the addition of new parties (Brunswick and Rocon) to adjudicate the issues raised in this new counterclaim.

While motions to amend are liberally viewed, courts have underscored that deadlines exist to "assure[] that at some point . . . the pleadings will be fixed." *United States ex rel. McDermott*, 2023 WL 2238550, at *2. In large part, the need for the pleadings to be fixed is intended to forestall the prejudice that results when an amendment requires the reopening of discovery, delays resolution of the matter, or unnecessarily increases the cost of litigation. *See, e.g., Textron Fin.- New Jersey, Inc. v. Herring Land Grp., LLC*, Civ. No. 06-2585, 2009 WL 690933, at *5 (D.N.J. Mar. 11, 2009). Here, these factors favor denying Defendant's motion. The proposed counterclaim would require reopening discovery, potentially adding new parties, delay a resolution, and increase the cost of litigation. It also belatedly raises questions about the parties' obligations under the performance bond, more than a year after the Court issued a summary judgment decision finding that Defendant breached the terms of the bond and Plaintiff was relieved of its obligations thereunder. *See TL of Fla., Inc. v. Terex Corp*, 706 F. App'x 89, 93 (3d Cir. 2017).

Finally, as to Defendant's request that it be allowed to present evidence of this new proposed counterclaim for damages at trial to support its argument that the alleged "overpayments" be treated as set offs against whatever is found to be owed to Plaintiff under the roof work letter

agreement, to the extent Defendant's alleged damages were not properly disclosed under Rule 26 and subject to discovery in this case, the evidence may be precluded under Rule 37(c). *See, e.g., Zarour v. Am. Sec. Ins. Co.*, Civ. No. 13-6384, 2015 WL 5167164, at *4 (D.N.J. Sept. 3, 2015) (precluding the plaintiff from claiming damages not disclosed prior to the deadline to amend/supplement his Rule 26 initial disclosures). Any application to exclude evidence at trial should be made via a motion *in limine* at the appropriate time.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, and other good cause shown,

**IT IS** on this 6th day of September, 2024, **ORDERED** as follows:

1. Defendant's Motion to File Supplemental Counterclaim (ECF No. 79) is **DENIED**.

2. The Clerk is directed to **TERMINATE** the motion pending at ECF No. 79.

3. The case is referred to the Magistrate Judge to hold a pre-trial conference.

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE